**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

MARIA ANN T.,[1]

                   Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                  Defendant.

Case No. 1:22-cv-00083-JMK

## DECISION AND ORDER

On or about February 19, 2013, Maria Ann T. ("Plaintiff") protectively filed an application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("the Act"),[2] alleging disability beginning January 31, 2013.[3] Plaintiff has exhausted

---

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Plaintiff brings a claim under Title XVI. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI). For convenience, the Court cites the regulations governing disability determinations under both titles.

[3] Administrative Record ("A.R.") 198. The SSI application summary, not the application itself, appears in the Court's record. The date of the SSI application summary is April 9, 2013. A.R. 198. Pursuant to 20 C.F.R. § 416.340–350, a protective filing date establishes the earliest possible application date based on a claimant's oral inquiry about eligibility or a verbal or written statement of intent to file for benefits. Therefore, February 19, 2013, is considered Plaintiff's application filing date for SSI benefits. *See* A.R. 199, 636. Plaintiff initially alleged disability beginning June 1, 1999. A.R. 198. At her hearing on January 21, 2016, Plaintiff amended her alleged onset date to

her administrative remedies and timely filed a Complaint seeking relief from this Court.[4] Plaintiff's Opening Brief asks the Court to reverse and remand the agency's decision for an immediate award of benefits, or in the alternative, for further administrative proceedings.[5] The Commissioner filed an Answer and Response Brief.[6] Plaintiff filed a Reply Brief.[7]

Oral argument was not requested and was not necessary to the Court's decision. This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[8] For the reasons set forth below, the Commissioner's decision is reversed and remanded for the immediate payment of benefits.

## I. STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[9] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a

---

January 31, 2013. A.R. 586. The application summary, not the application itself, appears in the Court's record.

[4] Docket 1 (Plaintiff's Compl.).

[5] Docket 25 (Plaintiff's Br.).

[6] Docket 21 (Answer); Docket 28 (Commissioner's Br.).

[7] Docket 29 (Reply).

[8] 42 U.S.C. § 405(g).

[9] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

Case No. 1:22-cv-00083-JMK, *Maria Ann T. v. Kijakazi*
Decision and Order
Page 2 of 32

conclusion."[10] Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[11] In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[12] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[13] A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which [she] did not rely."[14] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[15] Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[16] In particular, the Ninth Circuit has found that the ALJ's duty to develop the record increases when the

---

[10] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[11] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[12] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[13] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[14] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[15] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (quotations and citations omitted).

[16] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)); *superseded in part by statute on other grounds*, 20 C.F.R. § 416.929(c)(3). *See also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

claimant is unrepresented or is mentally ill and thus unable to protect her own interests.[17] This duty exists "even when the claimant is represented by counsel."[18]

## II. DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance benefits ("DIB") to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[19] In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[20] Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[21]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired If he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in

---

[17] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

[18] *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991) (quoting *Brown,* 713 F.2d at 443).

[19] 42 U.S.C. § 423(a).

[20] 42 U.S.C. § 1381a.

[21] 42 U.S.C. §§ 423(d)(1)(A).

significant numbers either in the region where such individual lives or in several regions of the country.[22]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[23]  A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[24]  If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[25]  The Commissioner can meet this burden in two ways:  "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[26]  The steps, and the ALJ's findings in this case, are as follows:

**Step 1.**  Determine whether the claimant is involved in "substantial gainful activity" (SGA).[27]  *The ALJ determined that Plaintiff had not engaged in SGA since the date of her SSI application, February 19, 2013.*[28]

**Step 2.**  Determine whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work

---

[22] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[23] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[24] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[25] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[26] *Tackett*, 180 F.3d at 1101.

[27] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[28] A.R. 639.

experience.  The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[29]  *The ALJ determined that Plaintiff had the following severe impairments:  major depressive disorder; post-traumatic stress disorder (PTSD); anxiety disorder; borderline personality disorder; hypertension; and morbid obesity.  The ALJ found that Plaintiff's "various other mental health conditions," including agoraphobia, were not medically determinable impairments.  The ALJ also found Plaintiff's bilateral epicondylitis and symptoms of numbness and tingling in the hands were not severe impairments.[30]*

*The ALJ considered the four broad functional areas of mental function, known as the paragraph B criteria.[31]  The ALJ found that Plaintiff had a mild limitation in understanding, remembering, or applying information.  The ALJ determined Plaintiff was moderately limited in concentrating, persisting, or maintaining pace.  The ALJ also found that Plaintiff had a moderate limitation in interacting with others and a moderate limitation in adapting and managing herself.[32]*

**Step 3.**  Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity.  If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the

---

[29] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[30] A.R. 639–40.

[31] 20 C.F.R., pt. 404, subpt. P, app. 1.

[32] A.R. 641–42.

claimant is conclusively presumed to be disabled.  If not, the evaluation goes on to the fourth step.[33]  *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.[34]*

Residual Functional Capacity.  Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.[35]  Once determined, the RFC is used at both step four and step five.  An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not severe.[36]  *The ALJ determined that Plaintiff had the residual functional capacity to perform light work with the following limitations:  she can frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; she cannot climb ladders, ropes or scaffolds; she should avoid all unprotected heights and concentrated exposure to hazardous machinery; and she is limited to work requiring simple, routine, and repetitive tasks, with only occasional decision making or changes in the work setting and occasional interaction with the general public, coworkers, and supervisors.[37]*

**Step 4.**  Determine whether the claimant is capable of performing past relevant work.  At this point, the analysis considers whether past relevant work requires the

---

[33] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[34] A.R. 640.

[35] 20 C.F.R. § 416.945.

[36] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[37] A.R. 642.

performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do her past relevant work, the claimant is deemed not to be disabled.[38] Otherwise, the evaluation process moves to the fifth and final step. *The ALJ determined that Plaintiff had no past relevant work.*[39]

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[40] *The ALJ determined there were jobs existing in significant numbers in the national economy that Plaintiff could have performed prior to November 25, 2018, including representative occupations such as retail price marker (DOT #209.587-034, SVP 2, light); small parts assembler (DOT #706.684-022, SVP 2, light); and collator operator (DOT #208.685-010, SVP 2, light).*[41]

The ALJ concluded that Plaintiff was not disabled prior to November 25, 2018, but became disabled on that date and continued to be disabled through December 10, 2021, the date of the ALJ's decision.[42]

---

[38] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[39] A.R. 657.

[40] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[41] A.R. 657–58.

[42] A.R. 659–60.

## III. PROCEDURAL BACKGROUND

Plaintiff was born in 1963. Prior to the established disability onset date of November 25, 2018, Plaintiff was a "younger individual" (age 18–49) and then an individual "closely approaching advanced age" (age 50–54). Since the established disability onset date, Plaintiff's age category has changed to an individual of "advanced age" (age 55 and older).[43] Plaintiff's claim was denied initially on June 28, 2013, and again in the unfavorable hearing decision by ALJ Paul Hebda, dated February 3, 2016.[44] On March 22, 2017, the Appeals Council denied Plaintiff's request for review.[45]

This Court remanded the case for further proceedings on May 9, 2018. The ALJ was directed to reassess the mental health opinions of Elizabeth Caffrey, LPC, as part of a "treatment team," which included Douglas Smith, M.D., a psychiatrist with Sitka Counseling & Prevention Services, Inc., and reassess Dr. Smith's separate medical opinion. The Court also directed the ALJ to reassess the opinion of Plaintiff's primary care provider, Danna-Ben Seeland, FNP.[46]

On January 17, 2020, the Court issued an Order Regarding Motion to Enforce Judgment.[47] On January 23, 2020, the Court amended its Judgment to include a statement that Plaintiff should receive SSI benefits as of November 26, 2018, and the

---

[43] A.R. 657. *See* 20 C.F.R. § 404.1563.

[44] A.R. 49, 14–27A.

[45] A.R. 6–10.

[46] A.R. 764.

[47] Docket 25-1.

Case No. 1:22-cv-00083-JMK, *Maria Ann T. v. Kijakazi*
Decision and Order
Page 9 of 32

Commissioner should grant a hearing as soon as possible to determine if Plaintiff was disabled prior to November 26, 2018.[48]

Upon remand, ALJ Cecilia LaCara issued a "partially favorable" decision on December 10, 2021.[49] She determined that Plaintiff was not disabled prior to November 25, 2018, but became disabled on that date and continued to be disabled through the date of the ALJ decision.[50] The ALJ noted that although Plaintiff alleged disability beginning January 31, 2013, the period of adjudication began with Plaintiff's protective filing date of February 19, 2013.[51] On August 11, 2023, Plaintiff appealed the Commissioner's final decision to this Court.[52]

## IV. DISCUSSION

Plaintiff is represented by counsel in this appeal. Plaintiff alleges that the ALJ erred by failing to properly consider the opinion evidence of Elizabeth Caffrey, LPC, and Douglas Smith, M.D., regarding Plaintiff's mental impairments.[53] Although Plaintiff also sets forth the standard for reviewing the ALJ's evaluation of Plaintiff's symptom testimony,

---

[48] *(Maria Ann T.) v. Berryhill,* Case No. 1:17-cv-00003-RRB, Docket 36. The Plaintiff's name was not redacted in Case No. 1:17-cv-00003-RRB.

[49] A.R. 633–660.

[50] A.R. 659. Although the Court's Orders of May 9, 2018, and January 17, 2020, instructed the ALJ upon remand to deem Plaintiff disabled as of November 26, 2018, the ALJ determined Plaintiff became disabled on November 25, 2018. *See* A.R. 659, 763, Docket 25-1 at 5.

[51] A.R. 636. The effective date of an SSI application, for the purpose of paying benefits, is the later of the first day of the month following the application date or the first day of the month following the date the individual becomes eligible for benefits with respect to the application. *See* 42 U.S.C.A. §1382(c)(7)(A), (B) (42 U.S.C.A. §1382(f) held unconstitutional on other grounds).

[52] Docket 1.

[53] Docket 25 at 1–19.

Plaintiff does not develop her argument and the Court will not address Plaintiff's symptom testimony in this Order.[54] Plaintiff asserts that this Court's "previous finding that no good reason has been identified for rejecting the Smith/Caffrey opinions is still the law of the case and requires reversal."[55] The Commissioner maintains the decision should be affirmed because the ALJ reasonably evaluated the medical and other opinions of record.[56]

For the reasons explained below, the Court reverses and remands for the immediate payment of benefits.

## A. Legal Standards

Plaintiff applied for SSI benefits in 2013, so the regulations prior to March 27, 2017, apply to her claim.[57] For applications filed before the new regulations became effective, SSA "give[s] more weight" to the medical opinions of examining and treating sources.[58] The ALJ gives "controlling weight" to a treating physician's medical opinion when it is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence.[59] If the ALJ

---

[54] Docket 25 at 11–12.

[55] Docket 25 at 19.

[56] Docket 28 at 3–11.

[57] A.R. 198. On January 18, 2017, the SSA published revisions to the rules regarding the evaluation of medical evidence. The revisions became effective on March 27, 2017. *See* 82 C.F.R. § 5844, 5869 (1-18-2017).

[58] 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

[59] *See* 20 C.F.R. § 404.1527(a)(2), 416.927(a)(2); *see also Woods v. Kijakazi,* 32 F.4th 785, 789 (9th Cir. 2022) (categorizing the doctor's relationship with a claimant in a "three-tiered hierarchy").

does not give the opinion controlling weight, the ALJ then considers the following factors in deciding the weight to give to any medical opinion: (1) the examining or treating relationship; (2) the consistency of the medical opinion with the record as a whole; (3) the physician's area of specialization; (4) the supportability of the physician's opinion through relevant evidence; and (5) other relevant factors, such as the physician's degree of familiarity with the SSA's disability process and with other information in the record.[60] For applications filed before March 27, 2017, an ALJ's failure to consider these factors constitutes reversible legal error.[61]

An uncontradicted medical opinion by a treating or examining doctor may only be rejected by the ALJ based on "clear and convincing reasons."[62] When "a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."[63] This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."[64]

---

[60] 20 C.F.R. §§ 404.1527(c), 416.927(c).

[61] *Trevizo v. Berryhill,* 871 F.3d 644, 676 (9th Cir. 2017).

[62] *Carmickle v. Comm'r of Soc. Sec.,* 533 F.3d 1155, 1164 (9th Cir. 2008) (quotation omitted).

[63] *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017).

[64] *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Under the regulations before March 2017, nurse practitioners and licensed social workers are each considered a "not acceptable source" or "other source."[65] Nonetheless, the SSA must consider these opinions and evaluate them pursuant to the same five factors used to evaluate accepted medical source opinions.[66] Information from "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairments and how it affects the claimant's ability to function.[67] Therefore, an opinion from a nonacceptable source, who has seen the individual in his or her professional capacity, may be given more weight than that of an acceptable source.[68] The ALJ is only permitted to disregard the testimony of other sources, including treating mental health counselors and social workers, if the ALJ "gives reasons germane to each witness for doing so."[69] Moreover, an ALJ is required to consider other

---

[65] 20 C.F.R. §§ 404.1513(d), 416.913(d) (effective Sept. 3, 2013, to March 26, 2017).

[66] 20 C.F.R. §§ 404.1527(f), 416.927(f).

[67] Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006). "Social Security Rulings [] do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1224 (9th Cir. 2009).

[68] SSR 06-03p.

[69] *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012) (quotations and citations omitted), *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *see also* 20 C.F.R. §§ 404.1527, 416.927.

source opinion evidence when "evaluating an 'acceptable medical source's' opinion."[70]

## B.    Plaintiff's Treating Providers

Here, Plaintiff challenges the ALJ's consideration of the opinions of her treating psychiatrist, Douglas Smith, M.D., and her treating clinician, Elizabeth Caffrey, LPC ("LPC Caffrey"), regarding Plaintiff's mental health.[71]  Both Dr. Smith and LPC Caffrey had a treating relationship with Plaintiff while she attended the Harbor Lights program at Sitka Counseling and Preventions Services.[72]

As explained by Dr. Smith, Harbor Lights is a rehabilitation program for adults experiencing "a serious mental illness," with a "diagnosable disorder of sufficient duration to meet diagnostic criteria specified in the DSM 5 or ICD."[73]  The program is a "drop in" day program providing group and individual community support services, case management services, individual psychotherapy, and pharmacologic management by a physician.[74]

---

[70] SSR 06-03p.  *See also e.g., Revels v. Berryhill,* 874 F.3d 648, 665 (9th Cir. 2017) ("Also, though [the nurse practitioner] is not an 'acceptable medical source,' she is an 'other source' and there are strong reasons to assign weight to her opinion.  [The nurse practitioner] was a treating source who examined [the claimant] at least ten times over two years."); *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (finding that ALJ erred in disregarding opinion of a nurse practitioner who served as claimant's primary medical care provider).

[71] Docket 25 at 9–19.

[72] *See e.g.,* A.R. 306–08, 339–42, 376–79, 436, 471, 618.

[73] A.R. 581.

[74] A.R. 582.

In February 2013, Plaintiff was hospitalized for suicidal ideation.[75] She was discharged after four days and referred to the Sitka Counseling program.[76] In April 2013, Dr. Smith performed a psychiatric evaluation. Dr. Smith noted Plaintiff's treatment history, and he indicated agreement with the treatment approach developed by LPC Caffrey, including individual therapy and medication management.[77] Dr. Smith observed borderline [personality disorder] traits, emotional instability, a low frustration tolerance, a tendency to become suicidal or very despondent, and very ambivalent relationships with care providers as well as with her family.[78]

LPC Caffrey treated Plaintiff weekly for approximately two years, from April 2013 through April 2015.[79] In October 2014, Plaintiff's primary care provider (Danna-Ben Seeland, FNP**)** requested that Dr. Smith see Plaintiff every six months.[80] On October 13, 2014, Dr. Smith met with Plaintiff and noted "she appeared generally well, but very anxious," and reiterated a diagnosis of depression and anxiety.[81]

---

[75] A.R. 315.

[76] A.R. 284.

[77] A.R. 539–41.

[78] A.R. 307–08.

[79] *E.g.,* A.R. 339, 384–543.

[80] A.R. 471. Dr. Smith referred to Nurse Seeland as "Dr. Danaben Seland" in his chart notes.

[81] A.R. 471.

Case No. 1:22-cv-00083-JMK, *Maria Ann T. v. Kijakazi*
Decision and Order
Page 15 of 32

Dr. Smith again saw Plaintiff on March 20, 2015, and noted some improvement.[82] Nevertheless, a month later Dr. Smith signed off on LPC Caffrey's April 2015 evaluation.[83] LPC Caffrey's records reflect major depressive disorder, recurrent severe; post–traumatic stress disorder, chronic; and other psycho-social problems in addition to obesity.[84]

### 1. April and August 2015 opinions

On April 14, 2015, LPC Caffrey, with Dr. Smith's approval on April 27, 2015, provided a Mental Residual Functional Capacity Assessment. They opined that Plaintiff was markedly and extremely limited in multiple subcategories of the "Paragraph B" criteria.[85] Dr. Smith and LPC Caffrey noted that Plaintiff received weekly individual and group psychotherapy as well as comprehensive individual and group community support. They opined that Plaintiff would not be able to work on a regular and sustained basis at least 20 percent of the time because of her mental impairment and she would miss 25 workdays per month.[86] Dr. Smith and LPC Caffrey specified that Plaintiff had "not been

---

[82] A.R. 436.

[83] A.R. 339–42.

[84] A.R. 551.

[85] A.R. 339–42. Paragraph B criteria are used to determine if a mental impairment meets or medically equals a listing under Section 12.00 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00.

[86] A.R. 342. Although opinions that a claimant is "disabled" or "unable to work" are issues reserved to the Commissioner, the ALJ is still required to "carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996); *Holohan v. Massanari,* 246 F.3d 1195, 1202–03 (9th Cir. 2011) ("If the treating physician's opinion on the issue of disability is controverted, the ALJ must still provide 'specific and legitimate' reasons in order to reject the treating physician's opinion."). In this case, Plaintiff's treating providers also provided functional assessments using Paragraph B criteria regarding Plaintiff's ability to remember locations and work-like procedures, ability to carry out instructions, maintain attention and concentration, perform activities within a

able to establish a health routine (i.e., getting up before noon, follow through, keeping a volunteer job even though liked it)" and was "immobilized from moving forward" by chronic suicidal ideation and flashbacks from a traumatic childhood. They also noted that Plaintiff had not been able to manage her own funds, but that Plaintiff wanted to begin managing her funds and "gain independent living skills."[87]

On August 7, 2015, LPC Caffrey completed a second Mental Residual Functional Capacity Assessment. She again opined that Plaintiff was markedly and extremely limited in multiple subcategories of the "Paragraph B" criteria.[88] LPC Caffrey again noted that Plaintiff received weekly individual and group psychotherapy as well as comprehensive individual and group community support. She opined that Plaintiff would not be able to work on a regular and sustained basis at least 20 percent of the time because of her mental impairment and she would miss 30 workdays per month. LPC Caffrey specifically opined that Plaintiff was not capable of working on a regular and sustained basis because Plaintiff became "over-stimulated quite easy and need[ed] to be able to remove herself from the situation when her anxieties be[gan]."[89]

The ALJ gave little weight to Dr. Smith's and LPC Caffrey's opinions from April and August 2015. The ALJ provided two reasons for discounting those opinions: (1) the April

---

schedule, maintain regular attendance and punctuality, complete a normal workday without interruptions from psychologically based symptoms, ability to act appropriately with the general public, ask simple questions and for assistance, and the ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. A.R. 340–41.

[87] A.R. 339–42.

[88] A.R. 377–79.

[89] A.R. 379.

Case No. 1:22-cv-00083-JMK, *Maria Ann T. v. Kijakazi*
Decision and Order
Page 17 of 32

and August 2015 opinions are "out of proportion to" and not supported by the providers' treatment notes and (2) the opinions are not "fully consistent" with the longitudinal evidence.[90] Although the ALJ considered the supportability and consistency of the April and August 2015 opinions, the ALJ did not consider the other relevant factors such as the length of Dr. Smith's and LPC Caffrey's treating relationship with Plaintiff, the frequency of examinations, or the nature and extent of their treatment relationship with Plaintiff, as is required by the SSA regulations prior to March 27, 2017.[91] This failure alone constitutes reversible legal error.[92]

As a "treating source" under the pre-2017 regulations, the ALJ was required to provide either "clear and convincing" or "specific and legitimate" reasons for rejecting Dr. Smith's opinions.[93] LPC Caffrey's opinions were approved by Dr. Smith and were considered by the ALJ under the same specific and legitimate standard of review.[94]

The only contradictory opinion discussed by the ALJ was the June 2013 opinion by Ron Feigin, M.D., a state agency medical consultant.[95] Although his opinion pre-dated

---

[90] A.R. 654.

[91] 20 C.F.R. §§ 404.1527(c), 416.927(c).

[92] *Trevizo v. Berryhill,* 871 F.3d 644, 676 (9th Cir. 2017).

[93] *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017).

[94] A.R. 654–55. *See Benton ex rel. Barnhart,* 331 F.3d 1030, 1039 (9th Cir. 2003) (the ALJ must take into consideration the functioning of a "treatment team" when determining what weight to give a medical source's opinion); *see also* A.R. 761 (The Court held that because Dr. Smith "signed off on Elizabeth Caffrey's mental RFC," the opinion was rendered the opinion of an acceptable medical source.).

[95] The previous ALJ gave great weight to Dr. Moore, the testifying mental health expert at Plaintiff's 2016 hearing. A.R. 25–26. No medical experts testified at Plaintiff's hearing on remand on July 19, 2021. A.R. 670–701.

Dr. Smith's and LPC Caffrey's opinions by two years, the ALJ gave the opinion "significant weight," but only "to the extent that" Dr. Feigin's opinion conformed with the RFC. Specifically, the ALJ accorded significant weight to Dr. Feigin's opinion "to the extent" it limited Plaintiff to "simple instructions and simple, routine tasks, such as those that may be learned in a step-by-step manner, and with limited public contact and only occasional need for supervisor interaction."[96]

### a. Consistency with treatment notes

In the Ninth Circuit, "[a] conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider."[97] Inconsistency with the medical record is a specific and legitimate reason for affording little weight to a treating physician's opinion.[98] Here, the ALJ discounted Dr. Smith's and LPC Caffery's April 2015 opinion that Plaintiff had not been able to establish a healthy routine and was unable to move forward in her life due to chronic suicidal ideation and trauma flashbacks because LPC Caffrey's "notes reflect [Plaintiff]'s continued involvement in her weekly radio program and activities with Harbor Lights."[99] The ALJ also discounted LPC Caffrey's opinion in August 2015 that Plaintiff would become overstimulated easily and needed to remove herself from a

---

[96] A.R. 653.

[97] *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014).

[98] *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016, 1020 (9th Cir. 1992) (holding that inconsistency between clinical findings and a physician's opinion regarding the plaintiff's work limitations is a specific and legitimate reason for disregarding the physician's conclusions).

[99] A.R. 654.

situation when her anxiety began, reasoning that Plaintiff's "episodic feelings of overwhelm did not result in avoidance or curb her interest in continued efforts at engagement" in the activities at Harbor Lights.[100] However, the record does not support the ALJ's conclusions.

Consistent with the April and August 2015 assessments, LPC Caffrey's notes recorded treatment sessions during which Plaintiff processed past traumas and current struggles with depression and suicidal ideation.[101] And although Plaintiff continued to participate in the activities at Harbor Lights, there were also times when Plaintiff did not respond to LPC Caffrey's telephone messages or notified LPC Caffrey that she could not attend a session because she was not ready to use her "(vocal) words."[102] LPC Caffrey's notes from approximately 2013 through 2015 show that Plaintiff was achieving "fair" progress in developing basic social and independence skills in a highly controlled and supported environment at Harbor Lights.[103]

Although she reached a different conclusion regarding Plaintiff's mental limitations,[104] medical expert Margaret Moore's testimony at Plaintiff's January 21, 2016, hearing independently confirms that LPC Caffrey's opinions are supported by her own

---

[100] *Id.*

[101] *See e.g.,* A.R. 430–539.

[102] *E.g.,* A.R. 428–30.

[103] *E.g.,* A.R. 380–543.

[104] Dr. Moore concluded that Plaintiff's mental impairments caused mild limitations on activities of daily living, moderate limitations on social functioning, and moderate limitations on Plaintiff's ability to sustain concentration, persistence, or pace.  A.R. 595–96.

treatment notes.[105]  Dr. Moore testified that the treatment notes during the period from April 2013 through the date of the hearing in 2016 showed Plaintiff continued to have "some chronic suicidal thoughts that serve the purpose of a coping mechanism, although a dysfunctional one."[106]  Dr. Moore characterized Plaintiff's participation at Harbor Lights as a continuation of her "dependent personality style," not as an example of Plaintiff's ability to maintain a full-time, competitive work schedule.[107]  She testified that the record showed Plaintiff had regular attendance and involvement in the activities at Harbor Lights, but the record also showed "some occasions where it almost seemed like she disappeared."[108]  Dr. Moore opined that Plaintiff would miss "some" work due to her mental impairments and she also thought Plaintiff was "the kind of person who would benefit from outreach."[109]  This testimony is consistent with Dr. Smith's and LPC Caffrey's opinion that Plaintiff would miss work due to her mental impairments and that Plaintiff required social supports to carry out daily activities.

---

[105] The ALJ did not evaluate Dr. Moore's expert testimony in the decision of December 10, 2021. A.R. 636–60.

[106] A.R. 595.

[107] Dr. Moore testified that Plaintiff's heavy involvement with Harbor Lights was "unfortunate because what's happening is that we aren't getting down to the real work of making her less dependent on the system and more independent and more functional, but we're seeing a facilitation of the tendencies that she already had with her mother."  A.R. 595.

[108] A.R. 607.

[109] A.R. 608.

Case No. 1:22-cv-00083-JMK, *Maria Ann T. v. Kijakazi*
Decision and Order
Page 21 of 32

Case 1:22-cv-00083-JMK   Document 30   Filed 10/10/23   Page 21 of 32

### b. Daily activities

The Ninth Circuit has often asserted that a claimant need not be "utterly incapacitated" in order to be disabled.[110] At the same time, "[a] conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion."[111] Here, the ALJ discounted the April and August 2015 opinions in part because of Plaintiff's attendance at Harbor Lights. The ALJ repeatedly referenced Plaintiff's continued involvement as a disc jockey for a radio program on Friday nights for two hours per week. The ALJ also noted Plaintiff's work as a night monitor at a residential facility one day per week, beginning in 2017.[112]

Plaintiff testified that when she worked with another individual as a night monitor in the residential facility, she would miss work more often. She testified that she would miss a week of work because she was having "a bad day emotionally or physically." But, Plaintiff also testified she had been trying to be more consistent in the three months before the July 2021 hearing because the facility was short-staffed.[113] Plaintiff's engagement at Harbor Lights took place within a very controlled and supportive environment, her activities at the radio station were only two hours per week, and her night monitor work at

---

[110] *Molina v. Astrue,* 674 F.3d 1104, 1112–13 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

[111] *Ford v. Saul,* 950 F.3d 1141, 1155 (9th Cir. 2020).

[112] *E.g.,* A.R. 641, 646, 650, 652. In a treatment note from Mountainside Family Healthcare Clinic in May 2014, Plaintiff reported volunteering once a week on Friday nights from 10:00pm to 12:00am at the public radio station. A.R. 323. Plaintiff reported that she continued to volunteer at the radio station in July 2021. A.R. 690.

[113] A.R. 694–95.

the residential facility was one eight-hour night shift per week.[114]  Even if Plaintiff was able to participate regularly in these limited activities, they do not conflict with her providers' April and August 2015 opinions that Plaintiff was unable to work an eight-hour workday on a regular and sustained basis.  Moreover, the vocational expert at Plaintiff's 2016 hearing testified that working approximately 10 hours per week would not be substantial gainful activity.  The vocational expert also testified that if an individual missed two or more days per month due to unscheduled absences, the individual would not be able to maintain employment.[115]  In sum, these activities were limited in duration and did not comprise a substantial part of Plaintiff's day, nor were they transferrable to a work environment.[116]

### c.    *Improvement with treatment*

The ALJ found that Plaintiff "showed improvement with a return to counseling and medication" after being hospitalized for suicidal ideation prior to her 2013 application and that "the record does not reflect further crisis interventions or active intent or efforts to

---

[114] *See* 20 C.F.R. Pt. 404, Subpt P, App. 1 § 12.00 D (How do we consider psychosocial supports, structured settings, living arrangements and treatment?); *see also Garrison v. Colvin,* 759 F.3d 995, 1016 (9th Cir. 2014) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer.  The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.") (citing *Bjornson v. Astrue,* 671 F.3d 640, 647 (7th Cir. 2012)).

[115] A.R. 626, 629.

[116] *Ghanim v. Colvin,* 763 F.3d 1154, 1165 (9th Cir. 2014) ("[T]here is no indication here that the limited activities Ghanim engaged in, often with the help of a friend, either comprised a 'substantial' portion of Ghanim's day, or were 'transferrable' to a work environment.").

commit suicide."[117]   The ALJ discounted Dr. Smith's and LPC Caffrey's opinions, reasoning that the "longitudinal evidence does indicate some limitations to sustaining interactions, maintaining concentration, persistence, and pace, and adapting and managing herself, but not to the extent indicated in the opinions of Ms. Caffrey and Dr. Smith."[118]

In the context of mental health, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment."[119]  Reports of improvement in mental health "must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function in a workplace."[120]  In this case, Plaintiff's mental health diagnoses of major depressive disorder, PTSD, anxiety disorder, and borderline personality disorder remained constant throughout the relevant disability period and were considered "severe" impairments by the ALJ.[121]   And, as noted previously, Plaintiff was achieving "fair"

---

[117] A.R. 655.

[118] A.R. 655.

[119] *Garrison v. Colvin,* 759 F.3d 995, 1017 (9th Cir. 2014) (citing *Holohan v. Massanari,* 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws.  That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.")).

[120] *Garrison,* 759 F.3d at 1017; *see also Hutsell v. Massanari,* 259 F.3d 707, 712 (9th Cir. 2001) ("We also believe that the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.").

[121] A.R. 639.

progress in developing basic social and independence skills in a highly controlled and supported environment at Harbor Lights.[122]

Although the Commissioner points to Plaintiff's report that her weekly counseling sessions were "very helpful" and that she responded well to her psychiatric medications, these are not specific and legitimate reasons for discounting the April and August 2015 opinions of Dr. Smith and LPC Caffrey.[123] Moreover, an improvement after hospitalization for suicide ideation and a lack of "crisis interventions or active intent or efforts to commit suicide" does not disprove the finding that Plaintiff is precluded from engaging in substantial gainful work.

For the reasons set forth above, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting the April and August 2015 opinions of Dr. Smith and LPC Caffrey.

## 2. Dr. Smith's February 2016 opinions

In February 2016, Dr. Smith co-signed two letters with Harbor Lights program director Janelle Kimberlin. These letters described the services provided to Plaintiff through the Harbor Lights program. The letters indicated that the supports at Harbor Lights provided "guidance, redirections, reminders and positive feedback" on a daily basis to assist Plaintiff in "being more open to treatment recommendations" and being "more willing to work through her anxiety and fears."[124]

---

[122] *E.g.,* A.R. 380–543.

[123] Docket 28 at 7.

[124] A.R. 579–82.

The ALJ afforded "some weight" to Dr. Smith's and program director Janelle Kimberlin's February 2016 opinions that "without the intervention of counselors and Harbor Lights staff, [Plaintiff] would not be able to care for herself or live independently" and that Plaintiff "'would not be functioning in the community as she is' without the community supports provided by the program."[125]  The ALJ reasoned that Dr. Smith's and Ms. Kimberlin's opinions indicated "some limitation in independent judgment, attending to multi-step or unfamiliar tasks, and anxiety around groups" and that the opinions were well-articulated and provided behavioral examples "consistent with evidence in the record," but the ALJ found that the treatment notes from providers at Harbor Lights did not "reflect the level of prodding, cajoling, and resistance to interventions suggested by the letters."[126] The ALJ pointed to treatment notes from late-2015 indicating Plaintiff's participation in group activities and highlighted the voluntarily nature of Plaintiff's attendance at Harbor Lights from 2015 through 2021 as reflective of "some independent adaptive and self-management abilities."[127]

In the Ninth Circuit, there "is a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work."[128] However, in this case, the ALJ found Dr. Smith's 2016 opinion to be supported by the

---

[125] A.R. 655.

[126] *Id*.

[127] A.R. 656.

[128] *Farlow v. Kijakazi,* 53 F.4th 485, 488 (9th Cir. 2022).

record and adequately explained, yet the ALJ crafted Plaintiff's limitations based on her own interpretation of the treatment notes from Harbor Lights.[129] The ALJ rejected all of Plaintiff's treating providers' opinions and Plaintiff's GAF scores.[130] No new medical experts testified at Plaintiff's hearing on remand and the ALJ did not evaluate Dr. Moore's expert testimony from Plaintiff's previous 2016 hearing.[131] Even the non-examining, reviewing medical opinion by Dr. Feigin, afforded "great weight" by the ALJ, was limited "to the extent" that the opinion conformed to the RFC.[132]

For the reasons stated herein, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting the April and August 2015 opinions of Dr. Smith and LPC Caffrey and for discounting Dr. Smith's and Harbor Lights program director Janelle Kimberlin's February 2016 opinions. This error was harmful because the ALJ failed to include the limitations opined by Plaintiff's treating providers in the RFC or in the hypothetical to the vocational expert.[133]

---

[129] "While it is to the staff [of Harbor Lights]'s credit that they have sought to keep [Plaintiff] engaged, she must want to do so, or she would have withdrawn. This reflects some independent adaptive and self-management abilities, as well as [the] ability to sustain occasional interactions with her peers and authority figures (the staff)." A.R. 656.

[130] A.R. 651–56. The ALJ noted that Plaintiff's GAF scores ranged from 45 to 55, but the ALJ gave them minimal weight. A.R. 656. *See Garrison v. Colvin,* 759 F.3d 995, 1002, n.4 (9th Cir. 2014) ("Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement.").

[131] A.R. 636–60, 670–701.

[132] A.R. 653.

[133] *Matthews v. Shalala,* 10 F.3d 678, 681 (9th Cir. 1993) (a vocational expert's testimony based on an incomplete hypothetical lacks evidentiary value to support a finding that a claimant can perform jobs in the national economy).

## C.     Law of the Case and the Rule of Mandate

Plaintiff asserts that the law of the case doctrine and the rule of mandate apply to the opinions of Dr. Smith and LPC Caffrey.  Specifically, she alleges that "the previous finding [by this Court] that no good reason has been identified for rejecting the Smith/Caffrey opinions is still the law of the case and requires reversal."[134]  In response, the Commissioner contends that the ALJ's reasoning for discounting Dr. Smith's and LPC Caffrey's medical opinions differs from and is "significantly more detailed" than the ALJ's reasoning in the 2016 decision before remand.[135]

The Ninth Circuit has held that both the law of the case doctrine and the rule of mandate apply to social security cases.[136]  "The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case," but the doctrine is not applied "when the controlling law has changed, or when applying the doctrine would be unjust."[137]  The rule of mandate is more broad in scope and prohibits a district court from varying or examining the mandate of an appellate court, but allows the district court to "decide anything not foreclosed by the mandate."[138]  Here, the Court's remand order provided specific instructions.  Regarding Dr. Smith's and LPC Caffrey's opinions, the Court ordered the

---

[134] Docket 25 at 12, 19.

[135] Docket 28 at 10.

[136] *Stacy v. Colvin,* 825 F.3d 563, 567 (9th Cir. 2016) (citations omitted).

[137] *Id.*

[138] *Id.* at 567–68 (quotations and citations omitted).

ALJ to consider Dr. Smith's opinion instead of ignoring it and to consider the two providers' opinions together as part of Plaintiff's treatment team. However, the Court did not provide the specific instruction that "no good reason" existed for rejecting Dr. Smith's and LPC Caffrey's opinions.[139] Neither the law of the case doctrine nor the rule of mandate was violated in this case.

## D. The Proper Remedy is Remand for Immediate Payment of Benefits

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court.[140] When prejudicial error has occurred, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[141] To determine which type of remand is appropriate, a court follows a three-step analysis.[142] Under the credit-as-true rule, in order to remand for payment of benefits, a court must conclude: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; (2) the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[143]

---

[139] A.R. 762.

[140] *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987) (remanding for determination of benefits where the panel was "convinced that substantial evidence does not support the Secretary's decision, and because no legitimate reasons were advanced to justify disregard of the treating physician's opinion").

[141] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

[142] *Garrison v. Colvin*, 759 F.3d at 1020 (9th Cir. 2014).

[143] *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017) (internal citations and quotations omitted).

However, "even if all three requirements are met, [a court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'"[144]

In this case, remanding for the immediate payment of benefits is appropriate. As shown above, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting Plaintiff's mental health providers' opinions regarding Plaintiff's mental health limitations.

Second, the record has been fully developed and further administrative proceedings would serve no useful purpose. Ninth Circuit "precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under [the] credit-as-true analysis."[145] Moreover, further proceedings are only necessary when there are significant factual conflicts between the rejected testimony and the objective medical evidence, such that the record is "uncertain and ambiguous."[146] Here, the record is not uncertain or ambiguous. Plaintiff's application for disability benefits has been pending for over ten years. She has already participated in two hearings before an ALJ and the record

---

[144] *Brown-Hunter,* 806 F.3d at 495 (quoting *Garrison,* 759 F.3d at 1021).

[145] *Garrison,* 759 F.3d at 1021 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.") (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).

[146] *Treichler,* 775 F.3d at 1105.

contains over 1,500 pages of medical records.[147]  Moreover, the period at issue, from February 19, 2013 to November 25, 2018, is a remote and closed period of disability with complete records.  Accordingly, the Court concludes the record is fully developed and further proceedings would serve no useful purpose.

Third, if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.  Plaintiff's providers opined that her impairments would substantially interfere with her ability to work on a regular and sustained basis at least 20 percent of the time and she would miss work 25–30 days per month because of her mental impairment or treatment for her mental impairment.[148]  The vocational expert at Plaintiff's 2016 hearing testified that working approximately 10 hours per week would not be substantial gainful activity.  The vocational expert also testified that if an individual missed two or more days per month due to unscheduled absences, the individual would not be able to maintain employment.[149]  Plaintiff has satisfied the requirements of the credit-as-true standard.

Even when all three credit-as-true criteria are met, a court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]"[150]  Here, the Court's review of the record as a whole does not create a serious doubt as to Plaintiff's disability.

---

[147] Docket 20.

[148] A.R. 342.

[149] A.R. 626, 629.

[150] *Garrison*, 759 F.3d at 1021.

## V. CONCLUSION

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and are not supported by substantial evidence. The Court does not have serious doubt that the Plaintiff is in fact disabled, and therefore, exercises its discretion to remand this case for the immediate award of benefits for the adjudication period between February 19, 2013, and November 25, 2018.

Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 25 is GRANTED; the Commissioner's final decision is VACATED, and this matter is REVERSED and REMANDED to the Commissioner for the immediate calculation and award of benefits.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 10th day of October, 2023, at Anchorage, Alaska.


*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
UNITED STATES DISTRICT JUDGE